May it please the Court, John Joyner on behalf of the appellant, Max, I believe it's pronounced Budziak. Budziak, thank you. I believe that's how it's pronounced. So, Your Honor, we've raised four issues on appeal. I guess initially I wanted to address the very recent case that the government brought to the Court's attention yesterday, I believe, on my first and second issues, the limewire, whether the evidence here is sufficient to support the distribution count and the discovery issue. The case, of course, I believe it's pronounced U.S. v. Sciardino, the First Circuit case. And it also relies on Schaefer, the case the government relied on in the district court. Again, I think that case is distinguishable as is Schaefer from our case because in that case, the First Circuit pointed out that there was other evidence that buttressed the findings that the defendant in that case wanted or knew that other people would be downloading these files on limewire. The First Circuit pointed out that there was evidence in the case that that defendant was computer savvy, that he set up his home network, that he installed software to erase his web browsing history, and he was the kind of computer savvy person who knew what he was getting into. Here, in contrast, Mr. Budziak, I believe, was an older man, a retired postal worker. There's no evidence that he was an expert in computers. Well, he may not have been an expert, but was he an experienced user of limewire? He installed it on his computer. He admitted moving files in and out of his shared folder. In light of our standard here, and that's viewing the evidence in the light most favorable to the government, I'm trying to figure out why this is not enough for a juror to infer that Mr. Budziak knew or the effect of placing or leaving a file in the shared folder. Well, I think the evidence is fairly scant that he had any great computer knowledge. He said he used it for downloading music files. Just based on what I described, though, why isn't that sufficient? He doesn't have to be an expert. He doesn't, but I think there has to be at least some evidence. Well, there was some evidence. Well, Your Honor, I think there's just no evidence here that he did anything more than install it and the default setting was for sharing. There's no evidence that he knew other people were accessing his files. There's no evidence, for example, that he knew that he'd shared taking in. Yes. Yes. And that's possession. Is it a difficult inference to understand that if you can take, someone else can take from you? Again, I've no dispute that that's possession, but there's no evidence that he knew anyone was actually, and perhaps at best. But he knew how he got files, and that's why I say if you obtain files from elsewhere, is it a big jump to infer that someone else is going to obtain what you put into a shared file? But I see no evidence that he was aware of that. I see an analogy to, at most, possession with knowledge, with intent, that others might, drawing an analogy to drug cases. But here, he's actually charged with distribution, and the only distribution being the FBI search of his computers. The distinction I see from this case, from Schaefer and the First Circuit case, is just the lack of evidence that he knew anyone had actually accessed his files, that anyone had actually gotten a hold of his files, that there was any actual distribution. I put an old couch in the front of my house. I may not know that someone's picked it up, but it goes away. Do you have to have actual knowledge that someone has taken something from your shared file to have sufficient evidence? Well, that's circumstantial evidence, though, that somebody's taken your file away. Well, isn't there circumstantial evidence if you put something into a shared file, that it's available to be taken away, and it does, in fact, get taken away by law enforcement officers? But, again, here we have a default setting, so no showing that he took any affirmative steps to make that happen, and no showing that he was aware that it happened. Yes, it was a possibility it could happen, but for evidence, there's just no evidence that he knew it ever happened. I just see a distinction here. So what are you contesting, the knowledge requirement? My contention, I suppose, is that there has to be some awareness, some knowledge on him that files were actually distributed, that he intended other people to share them, and they were actually he took some step to share it. Here he only downloaded the program, which has a default setting. One of the – I forgot the name. Some case from some other circuit analogized to, you know, you have a self-service station, and that's enough to, you know, amount to distribution. That's the Schaefer case, Your Honor. I know, but you're inviting others to, you know, come in and share, right? That's the Schaefer case, but even Schaefer had to say, or did say, but we have more than that here that supports it, the fact in Schaefer that the man knew other people were doing it and actually intentionally left his computer on to allow people. Just like at a service station, you have to open your gas station to allow people to buy gas. Here, there's no showing that he opened his computer to allow people access. You just have here FBI searches, nothing else. Well, that gets us to that, what is it called, the EP2 program? Yes, Your Honor. Which apparently allows the FBI to come into a limewire program, right? Again, Your Honor, and I would focus on the word apparently. And you think maybe, or your expert thinks maybe it could be from the, what do you call it, the back door. Exactly.  So the defense doesn't get any chance to examine this EP2 program to find out if what Agent Gordon is testifying to, well, he doesn't testify, he just gives a declaration, whether that's in fact true. So the defense is being forced to accept on faith, and so is the district court, the allegations or the claims, I shouldn't say allegations, the claims of Agent Gordon from the FBI. But there were declarations here, and the district court evaluated them. There were. And so I guess why couldn't the district court rely on the government's declarations stating that even if given access to the EP2P software, discovery would not reveal any helpful facts? Well, Your Honor, really, if that's going to be the standard of defense, it's just you have to accept the FBI at their word. There's just no questioning of it. The defense will just never be able to get any further facts. I note at least in Sheard D.O., if I'm saying it right, the same, I assume it's the same officer, Agent Gordon, there was at least an evidentiary hearing there where he testified, and there was some. And so what are you seeking here? Your Honor, since this EP, just on point two, a remand with discovery allowed to the defense expert under a strict protective order to question and to go into the FBI claims. Otherwise ---- Let me ask a couple of threshold questions. First, right, to get discovery, you have to make some minimal showing of materiality, right? Yes, Your Honor. Now, tell me, apparently you believe you met that showing. We did, because ---- Well, we did meet it, but the court and the magistrate judge did not. Now, one, what do you think the standard is and how did you meet it? Your Honor, we have to ---- it's the defendant's burden to show materiality. I think we showed it here because Mr. Budziak and his papers, in his declaration or papers, in the motions to suppress, the defendant himself, the individual, Mr. Budziak, repeatedly claimed that he had disabled the sharing function and that it was his belief that it was the FBI's actions that changed the settings of his computer. I'm not ---- In defense, he didn't offer a trial. No, he did not. He did not testify. But we're going to the discovery point now, and we needed that information for the motion to suppress. So that's how I think we ---- Well, let me look at it in retrospect, since that statement on his behalf appears to have been deemed by the district court to have been false, how much weight should we be putting on that? Again, Your Honor, we're putting it in a tough position if the defendant says, I disabled it, they must have done something. You really can't ---- I mean, you can't feed facts in the alternative. And for him to say at one time, I disabled it, and then later not to pursue that line, I'm not sure we should go back and say, well, let's pretend the trial didn't happen and all go back to the time of discovery and give him another crack at it. Well, Your Honor, I don't think that's ---- Well, I'll put it this way. He had a motion to suppress argument that lost. That argument just isn't relevant that you don't argue motions to suppress a trial. He went in a different sense there. But, Mr. Jordan, just for further, say, foundational background, as you argued earlier, at trial you took the position that the limewire was in default mode, right? Yes. And that's, which I think, as Judge Clifton's suggesting, is contrary to, you know, what you argued in the suppression. I don't see it, Your Honor. In the suppression argument that Mr. Budziak argued, he believed he had said it in ---- he had changed the file. At trial he didn't pursue that. Now, there could be several explanations for that. And at trial you presented a defense that was based on default mode. Default mode. So we're supposed to go back and pretend that, oh, that didn't happen. We're going to go back to assume that he affirmatively said it so he couldn't share it. But, Your Honor, again, this goes to the defendant's argument that he believed the FBI's EP2 program had done something to his settings. A second thing is, since he's not computer savvy ---- But presented no evidence to support that proposition other than his own speculation. His own declaration. That's all he has available. And a second possibility is that he thought he had disabled the share function, but because he was not computer savvy, he had failed to do so. So that would be consistent with both what the FBI said and his position at trial. So the state of facts we should take is that he was mistaken the first time or he was mistaken the second time? Your Honor, he didn't ---- his trial defense, he didn't take the stand. He really was going as to whether the reasonable doubt had been established or whether the government had proven all those elements beyond the crime. He didn't affirmably prevent or present a different defense at trial. He didn't testify. This whole defense at trial was caused by government witnesses. Let me ask the question this way. Assuming we're outbound by your client's latest position, namely that the limewire was in the default mode, is all this discovery still relevant? I mean, the denial of the discovery is still prejudicial to you? Can you make that argument? Yes, Your Honor, because as I understand Mr. Budziak's position at the suppression hearing, he was afraid that the FBI's use of that software affected the settings of his computer, that he thought he had set it to the not share, and that the government program, although the FBI claims it will only go in if it's allowed to, that that should be questioned. And since at trial the defense was premised on it being in the default mode, not being an allegation that the government somehow switched the setting, what difference does that discovery make? Because if the defense is right, the evidence would have been suppressed and should be suppressed, and so they wouldn't be able to present the evidence at trial. So we go back, we forget about what happened at trial, and go back to the motion to suppress. And all I see is a bare allegation that maybe the government software has the power to change the setting on the defendant's computer. And the only facts offered to support that are the defendant's own speculation, that must be what happened because I set it myself so that it wouldn't share. You could say a defense he chose not to present later. Okay, your brief itself reflects that our standard is the defendant must present some facts that would tend to show the government had information that would be useful to the defense. What facts did you present that the government had any information that would be useful to the defense, save for the speculation that maybe the government has the power to change the setting, which you don't support with any other proposition other than the defendant's bare speculation? That is our predicament, Your Honor. And again, I would say that's because we have no access, no defense experts who look at the government software to come up with a counterargument. Your Honor, if I just briefly go to my last argument, which is the jury question. This Court in Ruiz-Montes has said it. This is the type of situation where the district court should have heard an evidentiary hearing to flesh out these allegations. We had two jurors telling the trial counsel that there were extraneous facts discussed during jury deliberation. The attorney put this in a declaration, which I think is exactly the same procedure used in Navarro, the case before this Court. The district court denied the motion on two grounds. One, he found it hearsay, but I think that is that argument is dealt with in Navarro. Well, when you say facts, you're just talking about the jurors talking about their own experiences, right? Yes, but about Limewire and what effect the defendant could have done if he reloaded it. So this is about a crucial issue here, and it's a technical issue. It's an issue that some jurors have experience on and some don't. I agree the record isn't fully developed, but that's because an evidentiary hearing was not held. Under Ruiz-Montes, the hearing should have been held. So looking at the various factors that this Court normally looks at, I agree that some of them are not developed. But that's not the fault of the defense. The defense brought the problem to the Court's attention, and the Court summarily rejected it. I think this Court should remand for at least an evidentiary hearing so we can find out exactly what was said and what impact that had on the other jurors. I think I'm almost out of time, so if we could reserve a minute. Roberts. You may. Good morning, Your Honors, and may it please the Court. I'm Martine Ciccone for the United States. I'd like to first address the sufficiency challenge, and I think this Court understands that we're really dealing with two points. First, the government's theory of the case, which is that one engages in distribution when one makes files containing child pornography available over a file-sharing network, and on that network, others have ready access to those files, are expected to take them, and essentially can treat them as community property. The Schaffer – excuse me, the Tenth Circuit in the Schaffer case rejected that theory on the grounds that Your Honor mentioned, that it's no different than a self-service gas station. The First Circuit in Chiaradio recently said that when an individual consciously makes files available for others to take and those files are in fact taken, distribution has occurred. That's exactly what happened in this case, and I just meant that the government's theory was in no way an error. But in this case, isn't the defendant challenging the consciously part of this, that it was on some default setting or mistakenly on some shared setting? Your Honor, that's correct. And that would go to the defendant's knowledge that he was in fact making files available for others to take, which is, I think, the second point that we need to address, that the evidence of knowledge was more than sufficient in this case for the jury to reasonably conclude that the government had established the elements of the crime beyond a reasonable doubt. It's true that the files were set to a default setting, but the question is whether the defendant was aware that that setting allowed others to take his files. In fact, he admitted to the FBI agents when they searched his house that he had not altered the default settings on his LineWire software and that he moved files out of his shared folder. What those two statements suggested or what the jury could infer from those statements is, number one, that the defendant was aware that the default settings on LineWire facilitated sharing, and number two, that the defendant was aware that his software had not disabled that setting. The jury was also presented with evidence of the defendant's technical savvy. He had been running the program for two or three years, as he mentioned to the agents. He had also installed the program himself and was running the most recent version of the program on his computer. The jury was also presented with scraps of paper showing handwritten notes that the defendant admitted to writing, which described search terms commonly used to seek out child pornography over peer-to-peer networks like LineWire, and from that, the jury could infer at a bare minimum that he was a regular user of the program for this purpose. And finally, the defendant's computer bore evidence of his technical sophistication. In addition to the folder labeled Shared, which is the default LineWire folder, there were folders entitled LineWire Sort, Kids! and FlixIncest. From all of this evidence, the jury could reasonably infer and did reasonably conclude that the defendant understood his computer, that he understood the LineWire software, that he understood its sharing functions, and that he was aware that he was a regular user of the program, and that he did not act through ignorance, accident or mistake. Moving on to the discovery issue, Your Honors are correct that at this point, the defendant's position has changed with respect to the default settings. It is decidedly inconsistent with the position he took during his suppression motion. Indeed, I believe it's at page 384 of the ER's – I'm sorry, in Volume 2. The defendant points out that his case is different than the Ninth Circuit's previous case law on the Fourth Amendment and file sharing because, quote, Mr. Budziak does not assert that he tried and failed to protect his files from other LineWire users. Instead, by way of his motion and Rule 16 discovery motion, he asserts that he was successful in protecting his files from the general public, but that the files were backdoor in the LineWire software. What was the reference again? Excuse me? What was the page reference you gave us? 384. 389. I apologize. The discovery motion starts on 384. That quote is on 389. I would point out that it was not just apparent after the trial that Mr. Budziak had, in fact, not disabled his LineWire settings. That was apparent to the district court when he was deciding the discovery motion. On page 463 of the ERs, Agent Michael Gordon testifies or, excuse me, says in the declaration that the settings on the file had not been disabled. There was a share folder available for sharing. There was also another default setting that made all files that had been downloaded from LineWire available for sharing. And that's based on your agent's review and testimony? That's based on our agent's review of the defendant's LineWire props file, which he presented, which the district court had evidence of, based on the agent's declaration. Right. And so your case is predicated on that, right, on the EP2P software working as the agents said it did. So my question for you is how is Mr. Budziak supposed to contest this assertion without any access to the program? Your Honor, let me answer that by separating his two discovery motions. The first discovery motion was based on the allegation that the software could not isolate a single user and therefore download a complete file only from one user. In response to that motion, the government presented screenshots and computer logs from which the defendant's expert could, in fact, recompile all of the images that were submitted. It's explained very well in the First Circuit's opinion. But through the packet reassembly process, which is presented in the record, the defense counsel actually could, I'm sorry, the defendant's expert actually could have reconfigured each of the files and confirmed that each image of child pornography was, in fact, complete and was downloaded only from this defendant's IP address. That's with respect to the first discovery motion. With respect to the second discovery motion that dealt with the user share settings, it's true to some extent that the government's declarations were taken on faith, but that's not a result of any unfairness to the defendant. The defendant didn't present any evidence which would support his claim that he had disabled the share settings. And, in fact, that claim was decidedly inconsistent with all of the evidence before the district court. Kagan. Well, he presented, I guess, what he had, which is his declaration. What more should he have presented? What would have satisfied him on this? Your Honor. Isn't the only showing he has to make that it would be helpful to the defense to have that discovery? Your Honor, that's correct, but he has to show facts that would support the assertion that, in fact, the government is in possession of evidence that would be helpful. The fact in his declaration that he says, I disabled my, you know, sharing function. What he said in his declaration, Your Honor, is that at all times that he used LimeWire, he disabled the sharing function. The district court, excuse me, the oh, I'm sorry. The district court could conclude on the basis of the evidence that was before it that that declaration was untrue. He said again, at all times that I used LimeWire. Although the government couldn't present evidence of how the computer looked when the undercover operations were conducted in June, the defendant, again, said that at all times, meaning including July when his computer was seized, the share functions had been disabled. That was inconsistent with the review of the LimeWire props file. So just what would have been sufficient? I'm just curious from your view. Your Honor, I think if the defendant had made the same declaration and it was not inconsistent with the record, in fact, the record showed that in July when his computer was seized, the share functions were disabled and there were no files available for sharing, let alone any child pornography files available for sharing. I think if the defendant had made that showing, he would have gone further towards a factual demonstration that the government was in possession of evidence helpful to his defense. And then what would you have done? Let's say the court had said, okay, that's sufficient. Would you have worked something out then with them, a protective order, set up a special setting with their expert and your expert? Your Honor, I think at that point there would have been a review of the law enforcement privilege. We would have probably asserted that the evidence is sensitive. And, again, that would depend on a balancing of the defendant's need and the authentic need that he'd shown. I guess, but this is resolved in other districts all the time, it seems like, by protective orders coming to some agreement how this will be used, how it will be reviewed. Isn't that true? Well, Your Honor, the government did urge the district court, if it were to compel discovery, that it should first order at least review the evidence in camera to determine whether, in fact, the government had any backdoor available. So I think that would have been our preferred route, that the district court should first look at the software to determine for itself whether what the government alleged in its declaration or what the government agent stated was in fact true. But is it likely the district court's going to have the capability of figuring out there's a backdoor here? I mean, at root we've got a claim that the government has software that can itself alter the settings on defendant's computer. I don't think the court's likely to be able to figure that out, actually. It's not impossible Judge White could. But most of us couldn't figure it out. And I doubt the court's going to want to take on the burden in the first instance. So the question becomes, recognizing that law enforcement has an interest in not revealing its techniques, how is the defendant supposed to establish that, gee, this software gives the government the opportunity through its backdoor to alter the settings in my computer? And other than make the declaration the defendant did, which was I specifically said it so it couldn't share, I don't know that there are any facts the defendant could prove up. He can talk about the condition of the computer in July. But if in fact the government software has the capability of changing the setting and defendant doesn't know it, the fact that he hasn't switched it back to the way he thought it was isn't very conclusive that the government in fact didn't have the capacity to change the settings. So what else can a defendant show? Your Honor, again, I think that to the extent that the district court found that the evidence was insufficient in this case, he was correct because the defendant's declaration at all times, I changed the software settings, wasn't consistent with the record before it. In another case, if the defendant's declaration was supported, perhaps by another declaration from a family member who said, yes, that's true. Every time he used the software, I watched him install it. I saw him change the settings. Or any time I used that computer, it was disabled. If there had been some other evidence presented to the district court from which the district court could say, yes, the defendant has met his burden of materiality, at that point the district court would go forward and determine the best course of action to protect the government's sensitive information. So your argument here seems focused very much on the state of evidence in this particular case. Why wouldn't evidence you're hearing be appropriate? Well, Your Honor, as you noted, the defendant did not plead, did not claim at trial that he had altered the default settings. So I think it would be inconsistent to go back and pretend that the trial never happened and that his ---- No, but that's almost like saying on this issue he didn't have a Fifth Amendment privilege. Your Honor, Your Honor, of course, he did, he did, he did have a Fifth Amendment privilege. However, it would not be inconsistent with his, with his defense at trial to say, I thought that I had disabled settings, so it would not have, it would not have ---- I'm sorry, that statement would not have been inculpatory because the government has to show knowing distribution. I think at this point an evidence you're hearing is unnecessary. The district court considered this issue several times, and on the basis of the record before it and on the basis of the reliable declarations of the government, concluded that it was unnecessary not only ---- We still don't have the complete record. In other words, we don't know what that EP2P program is capable of, do we? Your Honor, you ---- Except we have the declaration of the FBI agent. Yes, Your Honor, that's ---- No one was able to cross-examine anybody here, correct? Your Honor, the defendant did cross-examine the FBI's, the FBI's expert witness and in fact opted not to call his own expert who could have testified. But no, at the discovery process, at the discovery stage. At the discovery stage there was no testimony. However, there was a suggestion that perhaps the defendant's expert would testify. That did not happen. The government had no problem with it. I believe that's in the record as well. Did the FBI's expert testify at trial? Yes, Your Honor, he did. And was he cross-examined on this same set of issues, that is the capability of the government software? Your Honor, the government elicited testimony from the agent at trial as to the user share settings and whether the FBI was capable of overriding those settings. The expert, of course, answered that they were not. And the defendant, I do not believe, cross-examined on that issue. Of course, he was well within his rights to. Well, but he didn't have a chance to ask him questions before that time at the discovery stage, correct? Your Honor, again, he had the government's expert declarations before him and there was a suggestion that perhaps testimony would be brought during the discovery period, but it simply wasn't. With respect to the jury issue, I would simply point out that the district court was correct when it found that the statements or the speculations that the jurors were alleged to have engaged in is not the type of evidence or extraneous information that can be admitted into evidence upon an inquiry into the verdict under Rule 606B of the Federal Rules of Evidence. As the district court noted, it would be a rare jury verdict that would stand if jurors could not discuss their personal information and then have that information admitted into evidence upon an inquiry into the verdict. This is your position. This is 606 material because it's not extraneous. That's correct, Your Honor. It does not fall outside the general bar on juror testimony because it does not concern extraneous prejudicial information. The jurors were simply discussing their personal knowledge. It may be technical knowledge, but it is far less driven by expertise than, for example, the information that a medical doctor would have, and there is no bar on doctors providing or serving as jurors. If the Court has no further questions, I ask you to affirm the verdict. Thank you. Jordan. Thank you, Your Honor. Just briefly on the last point, although there is not much evidence in the record as to what the juries discussed during the deliberations, one clear fact was that defense counsel at the trial filed a declaration saying that the information that was discussed was actually false, that the information given by these two jurors, one or two jurors, was not only extraneous but was incorrect. So based on that record, at least the judge should have held an evidentiary hearing to flesh this out. Unless there are any other questions, I'll submit it on that. No, we thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Tashima, Clifton, Murguia